Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Dan Fruchter
Tyler H.L. Tornabene
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAY 1 6 2022

SEAN F. McAVOY, CLERK
_____ DEPUTY
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

           Plaintiff,

        v.

ROSHON EDWARD THOMAS

           Defendant.

2:22-cr-035-RMP

PLEA AGREEMENT

Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Dan Fruchter and Tyler H.L. Tornabene, Assistant United States Attorneys, and Defendant ROSHON EDWARD THOMAS (Defendant), both individually and through Defendant's counsel, John B. McEntire, IV and Payton Martinez, agree to the following Plea Agreement:

1) <u>Waiver of Indictment, Guilty Plea, and Maximum Statutory Penalties:</u>

Defendant agrees to waive Indictment by a grand jury and plead guilty to the Information filed in this action (2:22-cr-035-RMP), charging him with one count of False Claims upon the United States, in violation of 18 U.S.C. § 287. Defendant understands this charge is a Class D Felony, which carries the following statutory penalties: (1) not more than 5 years of imprisonment; (2) up to a $250,000 fine; (3) up

Plea Agreement - 1

to 3 years of supervised release; (4) a $100 special penalty assessment; and (5) restitution.

Defendant understands a violation of a condition of supervised release carries an additional penalty of re-imprisonment for up to two years for each such violation, pursuant to 18 U.S.C. § 3583(e)(3), without credit for time previously served on post release supervision.

2)   The Court is Not a Party to the Agreement:

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. Defendant understands the Court is under no obligation to accept any recommendations made by the parties; the Court will obtain an independent report and sentencing recommendation from the United States Probation Office; and the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

Defendant acknowledges no promises of any type have been made to Defendant with respect to what sentence the sentence the Court will impose. Defendant understands the Court is required to consider the applicable sentencing guideline range, but may depart or vary upward or downward under the appropriate circumstances.

Defendant also understands that should the Court decide not to accept the parties' recommendations, that decision is not a basis for either withdrawing from this Plea Agreement or withdrawing this plea of guilty.

3)   Effect on Immigration Status if Not a United States Citizen

Defendant understands that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States. Defendant understands that a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty. Defendant understands that removal and other

Plea Agreement - 2

immigration consequences are the subject of separate proceedings. Defendant understands that while removal from the United States may be a result of Defendant's guilty plea if Defendant is not a citizen of the United States, no one, including Defendant's attorney or the District Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status. Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail, even if removal from the United States is a virtual certainty if Defendant is not a United States citizen.

    4)    <u>Waiver of Constitutional Rights</u>:

Defendant understands that, by pleading guilty, he is knowingly and voluntarily waiving certain constitutional rights, including:

    a)    the right to a jury trial;
    b)    the right to see, hear, and question the witnesses;
    c)    the right to remain silent at trial;
    d)    the right to testify at trial; and
    e)    the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, he retains the right to be assisted through the sentencing and any direct appeal by an attorney who will be appointed at no cost if Defendant cannot afford to hire an attorney. Defendant also acknowledges any pending pretrial motions are waived.

    5)    <u>Waiver of Inadmissibility of Statements</u>

Pursuant to Federal Rule of ~~Evidence~~ Criminal Procedure 11(f), Defendant waives the inadmissibility of any statements made by Defendant in the course of plea discussions with the United States. This waiver shall apply if Defendant withdraws Defendant's guilty plea or breaches this Plea Agreement.

Defendant acknowledges that any statements made by Defendant in the course of plea discussions in this case will be admissible against Defendant in the United

Plea Agreement - 3

States' case-in-chief if Defendant withdraws from, or breaches, this Plea Agreement, in any manner.

6) <u>Elements of the Offense</u>:

The parties agree that in order to convict Defendant of False Claims upon the United States, in violation of 18 U.S.C. § 287, as charged in the Information, the United States would have to prove, beyond a reasonable doubt, the following elements:

*First*, in the Eastern District of Washington and elsewhere, Defendant, ROSHON EDWARD THOMAS, knowingly presented a false claim to the U.S. Small Business Administration (SBA), an agency of the United States;

*Second*, Defendant knew that the claim was false or fraudulent at the time it was made; and

*Third*, the false or fraudulent claim was material to the SBA; that is, it had the tendency to influence, or was capable of influencing, the SBA to part with money or property.

7) <u>Factual Basis and Statement of Facts</u>:

The parties stipulate and agree the following facts are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea. This factual statement does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

The Economic Injury Disaster Loan ("EIDL") program is an SBA program that provides low-interest funding to small businesses, renters, and homeowners affected by declared disasters. On March 27, 2020, the President signed into law the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. That statute, along with the Coronavirus Preparedness and Response Supplemental Appropriations Act,

Plea Agreement - 4

authorized the SBA to provide EIDLs to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

In order to obtain an EIDL, a qualifying business was required to submit an application to the SBA providing information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was the year preceding January 31, 2020. The application was also required to certify that the information in the application was true and correct to the best of the applicant's knowledge. The EIDL loan amount was determined, in part, on information about the business—especially revenue. Any funds issued under an EIDL were determined and issued directly by the SBA. EIDL funds were eligible to be used to payroll expenses, sick leave, production costs, and business obligations such as debts, rent, and mortgage payments. In addition to the EIDL loan amount, EIDL applicants could also apply to obtain cash advances of up to $10,000 within three days of application. Advances, which were determined based on the number of employees that the applicant certified having, did not have to be repaid.

### Thomas Tattoo Parlor

On or about July 6, 2020, Defendant, a resident of the Eastern District of Washington, submitted EIDL application number 3308861858 to SBA in the name of his purported business, Thomas Tattoo Parlor. In the application, Defendant listed the "primary business address" of the Tattoo Parlor as his residential address in Spokane, Washington, but with "Ste. [suite]" in the place of "Apt." Defendant stated that Thomas Tattoo Parlor had been established on June 15, 2018, and was a "Tanning and Tattoo" business consisting of 10 employees and with gross receipts of $45,000 for the twelve months ending January 31, 2020. Defendant certified under penalty of perjury and other criminal penalties that this information was true and accurate.

These representations were materially false, and Defendant knew they were false at the time they were made. In fact, Thomas Tattoo Parlor was not created on

Plea Agreement - 5

June 15, 2018, and was not a legitimate existing business at the time of Defendant's EIDL application. Moreover, Thomas Tattoo Parlor did not have any employees, and did not even exist as of January 31, 2020, nor did it have any receipts in the 12 prior months. Accordingly, Thomas Tattoo Parlor and Defendant were not eligible for any EIDL funding.

Using the above materially false information, Defendant requested an advance of up to $10,000. On or about July 7, 2020, based on and in reliance on the materially false information submitted by Defendant, SBA provided Defendant a $10,000 advance electronically paid into a Bank of America account located in the Eastern District of Washington and owned and controlled by Defendant. On or about that same day, July 7, 2020, again based on and relying on the materially false information submitted by Defendant, SBA also approved additional EIDL funding of $12,500, such that the total amount disbursed to Thomas Tattoo Parlor was $22,500.

### I's Design

On or about July 28, 2020, Defendant applied for an EIDL by submitting application number 3312044971 to the SBA under the name of another purported business, I's Design. Defendant listed I's Design's business address as his own personal address, but with a "suite" number in the place of the "apartment" number. In his EIDL application for I's Design, Defendant stated that I's Design had been established on June 23, 2019, that it had 7 employees as of January 31, 2020, and that its gross revenues for the 12-month period prior to January 31, 2020 were $65,000. Defendant indicated that the Employer ID number ("EIN") for I's Design was 85-1909430. Defendant certified the information in the EIDL application was true and correct to the best of Defendant's knowledge, under penalty of perjury and other criminal penalties for false information.

Some of the representations made by Defendant were materially false, and Defendant knew they were false at the time they were made. In fact, I's Design was not a legal entity or registered business as of January 31, 2020. On or about July 13,

Plea Agreement - 6

2020, approximately 2 weeks before he submitted his application to SBA, Defendant sought and obtained EIN 85-1909430 from the Internal Revenue Service (IRS), which issues EINs. Additionally, the State of Washington business license submitted by Defendant bore an issuance date of July 24, 2020. Moreover, I's Design did not have any employees, and did not even exist as of January 31, 2020, nor did it have receipts in the 12 prior months. Accordingly, I's Design and Defendant were not eligible for any EIDL funding.

In his EIDL application, Defendant provided a bank account in his name for disbursement with Spokane Teacher's Credit Union (STCU) ending in 8211, an account located in the Eastern District of Washington that Defendant had created on or about July 24, 2020, approximately four days before submitting the EIDL application. As a result of the fraud and in reliance on the materially false and fraudulent representations and certifications made by Defendant, SBA approved the requested EIDL for I's Design and, on August 9, 2020, disbursed $32,400 to Defendant's STCU account located in the Eastern District of Washington. Defendant agrees he was otherwise ineligible to receive this funding. At the time of disbursement of the EIDL, Defendant's STCU account held $10.

On or about May 26, 2021, Defendant submitted another application to SBA for additional EIDL funding for I's Design, in the amount of an additional $32,500. On or about July 23, 2021, SBA denied the application for additional EIDL funding, because it was not able to verify that I's Design was a legitimate eligible business.

8)   The United States Agrees:

a.   To Dismiss Counts

At the time of sentencing, the United States agrees to move to dismiss the Indictment (ECF No. 1).

b.   Not to File Additional Charges:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against Defendant based upon the criminal

Plea Agreement - 7

activity set forth in this Plea Agreement that arises out of Defendant's conduct involving illegal activity charged or identified as a result of this investigation, unless the Defendant breaches this Plea Agreement any time before sentencing. Nothing in this agreement is intended to release any liability arising under Title 26, United States Code (Internal Revenue Code).

       9)    <u>United States Sentencing Guideline Calculations</u>:

The Defendant understands the United States Sentencing Guidelines (hereinafter "USSG" or "Sentencing Guidelines") apply and that the Court will determine Defendant's applicable guideline range at sentencing. Both parties reserve the right to advocate for or against any calculation of the USSG, including any enhancements or reductions either party deems appropriate, unless otherwise prohibited by this Plea Agreement.

       a)    <u>Base Offense Level</u>:

The parties stipulate and agree the base offense level for False Claims Upon the United States, in violation of 18 U.S.C. § 287, is 6. *See* U.S.S.G. §2B1.1(a)(2).

       b)    <u>Specific Offense Characteristics</u>:

The parties stipulate and agree to recommend a 6-level increase because the loss amount (both actual and intended) was more than $40,000, but less than $95,000. *See* U.S.S.G. §2B1.1(b)(1)(D). The parties are not aware of any other specific offense characteristics that apply.

       c)    <u>Acceptance of Responsibility</u>:

If Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than May 16, 2022, the United States will recommend that Defendant receive a two (2) level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a).

Plea Agreement - 8

If the adjusted offense level determined by the Court is 16 or greater and Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than May 16, 2022, the United States will instead move for a three (3) level downward adjustment in the offense level for Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and (b).

The parties agree that the United States may, at its option and upon written notice to Defendant, not recommend a reduction for acceptance if, before sentencing, Defendant is charged or convicted of any criminal offense whatsoever or, or if he tests positive for any controlled substance.

The parties are not aware of any other adjustments that apply.

d)  Criminal History:

The parties have made no agreement and make no representations as to the criminal history category, which shall be determined after the PSIR is completed.

10)  Departures/Variances:

Defendant is free to request a downward departure or variance from the sentencing guidelines, including based on Defendant's health circumstances pursuant to U.S.S.G. § 5H1.4. The United States reserves its right to oppose any downward departure or variance.

11)  Incarceration:

Defendant acknowledges that the United States will recommend a sentence of incarceration no greater than the low end of the sentencing guideline range determined by the Court. Defendant is free to recommend any legal sentence.

12)  Criminal Fine:

The parties agree to recommend no additional criminal fine.

13)  Restitution:

Plea Agreement - 9

The parties stipulate and agree that, pursuant to 18 U.S.C. §§ 3663, 3663A and 3664, the Court should order Defendant to pay restitution to the United States Small Business Administration. Pursuant to 18 U.S.C. § 3663(a)(3), the parties agree the restitution amount should be at least $54,900, which consists of at least $22,500 for EIDL application number 3308861858 and at least $32,400 for EIDL application number 3312044971. The United States reserves the right to request additional restitution for any amounts owed to SBA relating to these two EIDL loans, including but not limited to, loan origination fees, recording fees, accrued interest, and other loan costs.

With respect to restitution, the parties agree to the following:

(a) <u>Payments</u>

The parties agree the Court will set a restitution payment schedule based on Defendant's financial circumstances. See 18 U.S.C. § 3664(f)(2), (3)(A). That being said, Defendant agrees to pay not less than 10% of his net monthly income toward his restitution obligation.

(b) <u>Treasury Offset Program and Collection</u>

Defendant understands the Treasury Offset Program (TOP) collects delinquent debts owed to federal agencies. If applicable, the TOP may take part or all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations. *See* 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

Defendant also understands the United States may, notwithstanding the Court-imposed payment schedule, pursue other avenues to ensure the restitution obligation is satisfied, including, but not limited to, garnishment of available funds, wages, or assets. *See* 18 U.S.C. §§ 3572, 3613, and 3664(m). Nothing in this acknowledgment shall be construed to limit Defendant's ability to assert any specifically identified exemptions as provided by law, except as set forth in this Plea Agreement.

Plea Agreement - 10

### (c) Obligations, Authorizations, and Notifications

The Defendant agrees to truthfully complete the Financial Disclosure Statement within 30 days of receiving it, which will be signed under penalty of perjury and provide it to both the United States Attorney's Office and the United States Probation Office. If Defendant fails to timely and accurately complete this disclosure, the United States reserves the right not to recommend full acceptance under U.S.S.G §3E1.1, as well as to pursue any other appropriate remedies.

Defendant authorizes the United States Attorney's Office to obtain a credit report on Defendant after he enters into the Plea Agreement. Until the fine or restitution order is paid in full, Defendant agrees to provide waivers, consents, or releases requested by the United States Attorney's Office to access records necessary to verify his financial information.

Defendant agrees to notify the United States Attorney's Office before Defendant transfers any interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by Defendant, including any interest held or owned under any name, including trusts, partnerships and corporations. Further, pursuant to 18 U.S.C. § 3664(k), Defendant shall notify the Court and the United States Attorney's Office within a reasonable period of time, but no later than 10 days, of any material change in Defendant's economic circumstances that might affect his ability to pay restitution, including, but not limited to, new or changed employment, increases in income, inheritances, monetary gifts or any other acquisition of assets or money.

Until the fine or restitution order is paid in full, Defendant agrees to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

Pursuant to 18 U.S.C. § 3612(b)(F), Defendant understands and agrees that until a fine or restitution order is paid in full, the Defendant must notify the United States

Plea Agreement - 11

Attorney's Office of any change in the mailing address or residence address within 30 days of the change.

14) <u>Supervised Release:</u>

The parties agree to recommend a 3-year term of supervised release, including all standard conditions, as well as the following conditions:

a) Defendant will provide financial information and copies of federal income tax returns, and allow credit checks, at the direction of the United States Probation Office;

b) Defendant disclose shall all assets and liabilities to the United States Probation Office and shall not transfer, sell, give away, or otherwise convey or secret any asset, without the advance approval of the United States Probation Office;

c) Defendant be prohibited from incurring any new debt, opening new lines of credit, or enter any financial contracts or obligations without the prior approval of the United States Probation Office; and

d) Defendant participate and complete financial counseling and life skills programs at the direction of the United States Probation Office.

15) <u>Mandatory Special Penalty Assessment:</u>

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

16) <u>Payments While Incarcerated:</u>

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court and a term of incarceration is imposed, then he agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

17) <u>Additional Violations of Law Can Void Plea Agreement:</u>

Plea Agreement - 12

The parties agree the United States may, at its option and upon written notice to Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, before sentencing, Defendant is charged or convicted of any criminal offense, or Defendant tests positive for any controlled substance.

18) <u>Waiver of Appeal Rights</u>

Defendant understands that he has a limited right to appeal or challenge his conviction and the sentence imposed by the Court. Defendant waives the right to appeal his conviction and sentence except that Defendant retains the right to appeal his sentence if the Court imposes a sentence above the applicable guideline range as determined by the Court. Defendant also expressly waives his right to challenge any restitution amount above $56,000.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

19) <u>Withdrawal or Vacatur of Defendant's Plea</u>

    a.    Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then: this Plea Agreement shall become null and void; the United States may prosecute Defendant on all available charges;

    b.    The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging

Plea Agreement - 13

instrument, or were not charged because of this Plea Agreement; and

c. the United States may file any new charges that would otherwise be barred by this Plea Agreement.

d. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

e. Defendant agrees to waive any objections, motions, and defenses Defendant might have to the United States' decision about how to proceed, including a claim that the United States has violated Double Jeopardy.

f. Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

20) <u>Integration Clause:</u>

The parties acknowledge this document constitutes the entire Plea Agreement between the parties, and no other promises, agreements, or conditions exist between the parties concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities. The parties agree this Plea Agreement cannot be modified except in a writing that is signed by both parties.

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

Plea Agreement - 14

_____  5/16/2022
Dan Fruchter                     Date
Assistant United States Attorney

_____  5/16/2022
Tyler H.L. Tornabene             Date
Assistant United States Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am pleading guilty because I am guilty.

_____  5-16-2022
ROSHON EDWARD THOMAS             Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept the Defendant's plea of guilty.

_____  5/16/22
John B. McEntire, IV             Date
Attorney for Defendant

Plea Agreement - 15