Vanessa R. Waldref
United States Attorney
Tyler H.L. Tornabene
Daniel Hugo Fruchter
Assistant United States Attorneys
Eastern District of Washington
Post Office Box 1494
Spokane, WA 99210 1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:22-CR-035-RMP |
| Plaintiff, | |
| vs. | United States' Sentencing Memorandum |
| ROSHON EDWARD THOMAS, | |
| Defendant. | |

Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, Tyler H.L. Tornabene and Daniel Hugo Fruchter, Assistant United States Attorneys for the Eastern District of Washington, submits the following Sentencing Memorandum. The United States recommends that this Court sentence Defendant ROSHON EDWARD THOMAS to a low-end Guideline sentence, three years of supervised release, restitution in the amount of $54,900, entry of a money judgment in that amount, and one mandatory special penalty assessments totaling $100. Based on the Defendant's end-stage

UNITED STATES' SENTENCING MEMORANDUM - 1

kidney disease, should this Court grant the Defendant's motion for a down ward departure under USSG § 5H1.4, it should impose eight (8) months of home detention as opposed to a term of incarceration.

## I.    Factual Background

On March 15, 2022, the Grand Jury returned an indictment charging the Defendant with two counts of Wire Fraud, in violation of 18 U.S.C. § 1343. (ECF No. 1). On May 16, 2022, as part of the plea negotiations, the Defendant was charged by Information Superseding Indictment with one count of False, Fictitious, or Fraudulent Claim in violation of 18 U.S.C. § 287. (ECF No. 22). That same day the defendant pleaded guilty to the violation of 18 U.S.C. § 287, pursuant to a plea agreement. (*See* ECF No. 25).

The charges against the Defendant stem from three Economic Injury Disaster Loans (EIDLs) that the Defendant applied for requesting a total of $87,400 and receiving a total of $54,900 from the U.S. Small Business Administration (SBA), using materially false and fraudulent information. (ECF No. 25 at 5-7). Specifically, on July 6, 2020, the Defendant applied for an EIDL for a non-existent business he called "Thomas Tattoo Parlor," falsely claiming that it was an actual business established approximately two years prior, employed 10 people, and had gross receipts of $45,000 in the previous year. (ECF No. 25 at 5). The Defendant's representations were completely false, as he knew, but through them he was able to personally receive a total of $22,500 from the SBA, which included a $10,000 advance. (ECF No. 25 at 6).

Just a few weeks after his first EIDL application the Defendant applied for another EIDL on July 28, 2020, and once again did so for a non-existent business he called "I's Design." (*Id.*). The Defendant falsely certified to the SBA that the business had been established about a year earlier, had 7 employees, and gross revenues of $65,000 in the preceding year. (*Id.*). The Defendant knew these were false representations, which he used to intentionally defraud the SBA out of an

UNITED STATES' SENTENCING MEMORANDUM - 2

additional $32,400.  (ECF No. 25 at 7).

Nearly a year later, on May 26, 2021, the Defendant tried again to defraud the SBA through another phony EIDL application requesting an additional $32,500 for his non-existent business "I's Design." (*Id*.).  However, the SBA denied that application and so prevented the Defendant from stealing additional monies from the public through his scheme.  (*Id*.).

The Defendant and the United States (herein collectively "the parties" where appropriate) have reached substantial agreement in this case.  The plea agreement between the parties provides, *inter alia*, that the parties agree and stipulate that this Court should order the Defendant to pay restitution to the SBA in the amount of at least $54,900.  (ECF No. 25 at 10).  The plea agreement further provides, *inter alia*, that the parties agree that the Defendant's base offense level for count one of the Information is six (6) pursuant to USSG § 2B1.1(a)(2), that the Defendant's base offense level is increased by six (6) based an agreed amount of actual and intended loss of $87,400, pursuant to USSG § 2B1.1(b)(1)((D), and that the Defendant's offense level is reduced by two (2) for his timely acceptance of responsibility under USSG § 3E1.1(a).  (ECF No. 25 8-9).  Accordingly, the parties agree that the Defendant's adjusted offense level, before applying any downward departure, is ten (10).  (*See id*.).  The Presentence Investigation Report (PSIR) also calculates the Defendant's adjusted offense level, prior to the application of any downward departure, to be ten (10) and further calculates the Defendant's criminal history as a Category III, yielding a sentencing range in Zone C of 10-16 months incarceration.  (ECF No. 36 at 22).

II. <u>The Defendant's Motion for Downward Departure Based on Health (§ 5H1.4)</u>

The Defendant has end-stage kidney disease, requiring nightly dialysis, and is on the wait list for a kidney transplant through Swedish Medical Center in Seattle and accordingly has moved for a downward departure under USSG

UNITED STATES' SENTENCING MEMORANDUM - 3

§ 5H1.4. (ECF No. 32 at 1-2; *see also* ECF No. 36 at 17-18). The Defendant asks this Court to depart downward from an offense level of ten (10) to an offense level of four (4). (ECF No. 32 at 12). U.S. Probation also identifies USSG § 5H1.4 as a potential ground for departure in this case based on the Defendant's medical conditions requiring an extensive and time-consuming amount of treatment and care. (ECF No. 36 at 21).

The United States has reviewed the materials provided by the Defendant, has conferred with defense counsel, and has reviewed the details of the Defendant's medical conditions in the PSIR. It is clear that USSG § 5H1.4 is a potential ground for departure in this case. However, the six (6) level downward departure requested by the Defendant and the resulting 0 to 6 month range, is not justified based on the Defendant's extensive and troubling criminal history as well as the nature of his conduct being a multi-year scheme to defraud an essential government program during a global pandemic and which included creating and submitting multiple fraudulent applications. Rather, for the reasons detailed herein, should this Court depart downward under USSG § 5H1.4 it should do so by no more than one (1) level. Doing so would yield a Zone B sentencing range of 8 to 14 months which would be eligible for the imposition of home detention per USSG § 5B1.1(a)(2) as a substitute for imprisonment under USSG § 5F1.2. Should this Court so depart downwards the United States' recommendation would be for a low-end sentence of 8 months home detention.

Given the Defendant's extreme and chronic medical conditions, home detention may be an appropriate alternative to incarceration. Home detention can of course be tailored and adjusted to employment needs and medical needs as well as other proscribed needs. *See* USSG § 5F1.2 n. 1. Of note in this case, it appears that home detention would not result in the Defendant being removed from the kidney transplant waiting list. As detailed below, home detention would still however provide a sentence that is sufficient, but no greater than necessary, given

UNITED STATES' SENTENCING MEMORANDUM - 4

the statutory sentencing factors.

      III.    <u>Should this Court Depart Downward Under USSG § 5H1.4, the United States' Recommended Sentence is Sufficient, but No Greater Than Necessary, and Otherwise Comports with the Relevant Sentencing Factors</u>

The Court must consider all of the sentencing factors set forth in § 3553(a) in determining the Defendant's sentence. Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

In this case, the nature and circumstances of the Defendant's sentence as well as his history and characteristics auger towards a sentence of more than probation with no confinement of any kind. The Defendant, after a career of violent crime seemingly stopped only after his severe medical condition began in 2002. He subsequently elected to fraudulently exploit a program intended to prevent individuals from being financially ravaged by the impact of a global pandemic. This of course informs the nature and seriousness of the Defendant's offense. He did not choose to exploit a company, which would have been bad enough, nor did he choose to only defraud an essential government program one time instead electing to defraud it, and attempt to defraud it, multiple times over the course of many months. The Defendant's crime required planning, reflection,

UNITED STATES' SENTENCING MEMORANDUM - 5

and a disregard for the well-being of others during a time of international crisis. That said, the Defendant's need for medical care and relevant policy statements issued by the Sentencing Commission in this regard support a more lenient sentence than 10 months of incarceration. However, the need to avoid unwarranted sentencing disparities among similarly situated defendants certainly supports the imposition of a sentence more onerous than probation with no confinement or detention of any kind. Finally, the need to provide restitution in this case is adequately addressed in the plea agreement.

IV.  Conclusion

The United States recommends that should this this Court depart downward under USSG § 5H1.4 that it depart by no more than one (1) offense level and impose a sentence of eight (8) months home detention, all mandatory and appropriate conditions of probation under USSG § 5B1.3, three years supervised release, $54,900 in restitution, and a $100 special penalty assessment.

RESPECTFULLY SUBMITTED this 4th day of August, 2022.

Vanessa R. Waldref
United States Attorney

**/s Tyler H.L. Tornabene**
Tyler H.L. Tornabene
Daniel Hugo Fruchter
Assistant United States Attorneys
Eastern District of Washington
920 W. Riverside Ave., Suite 340
Spokane, Washington 99201
Telephone: (509) 353-2767
Email USWAE.TTornabeneECF@usdoj.gov

### CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2022, I caused the foregoing to be filed with the Clerk of the Court using the CM/ECF System and service of such filing will be

UNITED STATES' SENTENCING MEMORANDUM - 6

sent by reliable electronic means to attorney John V. McEntire, IV, for Defendant Roshon Edward Thomas, as follows:

>John B. McEntire, IV
>Federal Defenders of
>Eastern Washington and Idaho
>10 N Post Suite 700
>Phone: (509) 624-7606
>Email: Jay_McEntire@fd.org

>***s/Tyler H.L. Tornabene***
>Tyler H.L. Tornabene
>Assistant United States Attorney

UNITED STATES' SENTENCING MEMORANDUM - 7