

John B. McEntire, IV
*Senior Litigator*
10 North Post Street, Suite 700
Spokane, Washington 99201
509.624.7606
Attorney for Roshon E. Thomas

United States District Court
Eastern District of Washington
Honorable Rosanna M. Peterson

| | |
|---|---|
| United States of America, | No. 2:22-CR-035- RMP-1 |
| Plaintiff, | Sentencing Memo |
| v. | |
| Roshon Edward Thomas, | |
| Defendant. | |

# I. Introduction

Before sunrise on March 17, 2022, six armed federal agents made entry into Roshon Thomas's South Hill apartment. Inside, Mr. Thomas was laying on his medical bed, attached to a dialysis machine. He unplugged from the machine, met the agents, and was arrested and transported to the FBI office for an interview.

There, Mr. Thomas acknowledged putting false information in two business loan applications. That false information didn't involve Mr. Thomas's personal details (he signed the promissory notes using his own name, date of birth, address, and social security number); the false information involved his current and future businesses (he put down false revenue reports, employee counts, and established dates). By doing so, Mr. Thomas received $54,900 in Cares Act loans he didn't qualify for—loans he was legally obligated to pay back.

A grand jury charged Mr. Thomas with wire fraud,[1] he pleaded to making false statements,[2] and he now comes before the Court for sentencing. If the Court grants Mr. Thomas's pending departure request (based on his kidney failure and transplant status) in-full, then his advisory range would be 0-6 months;[3] if the Court grants Mr. Thomas's departure request in-part (what the Government asks), then

---

[1] ECF No. 1 (Indictment).
[2] ECF No. 25 (Making False Statements).
[3] ECF No. 32 (Mr. Thomas's downward departure request, where he asks for a 6-level departure).

his advisory range would be 8-14 months;[4] and if the Court declines to grant his departure request altogether, then his advisory range would be 10-16 months. No matter Mr. Thomas's range, his request remains: he respectfully asks the Court to impose 5 years of probation. The reasons for this request are set forth below.

## II. Discussion

### A. What happened.

In June 2017, Mr. Thomas returned to the community after serving a 15-year drug sentence.[5] Shortly after his return, medical issues put Mr. Thomas in the hospital, where doctors diagnosed him with end-stage kidney disease.[6] To make up for Mr. Thomas's complete kidney failure, doctors surgically implanted a catheter in his abdomen, allowing the Sisyphusian ritual of dialysis to begin—9 hours per day, 7 days per week, until new kidneys could be found.

Financially, the diagnosis cost Mr. Thomas greatly. He applied for social security disability,[7] but still needed additional income to make ends meet, so he worked first at Wal-Mart, then at Napa Auto.[8] These jobs exhausted Mr. Thomas, especially as the daily dialysis sessions took their toll.

---

[4] ECF No. 39 (Government's Sentencing Memo, where it asks for a 1-level departure).
[5] ECF No. 36 at ¶ 80 (Final PSIR).
[6] ECF No. 36 at ¶ 124 (Final PSIR).
[7] ECF No. 36 at ¶133 (Final PSIR).
[8] ECF No. 36 at ¶ 130 (Final PSIR).

Wanting to try something different, Mr. Thomas typed up a plan for a nascent idea: I's Design, a business that makes custom t-shirts. He purchased some shirts, a press, and used his graphics skills to draw up designs. The business idea was a win-win: he liked designing shirts, and it allowed him to remain at home, which was far less demanding than shifts at Napa or Wal-Mart. One problem: he lacked the money to get his business off the ground.

Then came the Cares Act, which promised loans for *existing* businesses during the pandemic. If Mr. Thomas qualified for these loans at all (it's a stretch to say he did), he wouldn't have qualified for much, as loan size was determined by business metrics such as employee count and the prior year's gross revenues. Mr. Thomas lacked such metrics, as he hadn't even obtained a business license, let alone started selling shirts on a widespread scale. But he applied anyway, inserting false figures. He did the same with Thomas Tattoo Parlor, another business idea that wasn't off the ground.

While Mr. Thomas provided false information about his businesses, he provided truthful information about himself. He included his personal address, phone number, social security number, and date-of-birth on the application. So when Mr. Thomas signed the promissory notes for both loans, the Small Business Administration possessed the information needed to legally enforce these loans

should Mr. Thomas default. In short, Mr. Thomas borrowed money he wasn't supposed to receive, but intended to pay it back.[9] It's an atypical fraud offense.

Mr. Thomas ultimately received two loans from the SBA, and he used these funds for business supplies, rent, utilities, medical bills, and a car for the job he has worked during the pandemic: delivering groceries for Instacart and GoPuff.

**B.     Why probation makes sense.**

There are four reasons why a sentence of probation makes sense: 1) his medical issues; 2) his housing; 3) restitution's purpose; and 5) accountability. Each will be addressed.

**1.     Mr. Thomas suffers from serious medical issues.**

Mr. Thomas suffers from end-stage kidney disease. In his pending downward departure request, Mr. Thomas walked through the myriad ways a custodial sentence places him at risk; he also walked through how a custodial sentence harms both the BOP and the Government. He won't walk through those issues again, but they remain a strong factor for the Court to weigh when imposing sentence. *See* 18 U.S.C. §3553(a)(2)(D) (the need for a sentence to provide Mr. Thomas "with needed…medical care…in the most effective manner").

---

[9] Consistent with that intent, Mr. Thomas already completed full financial disclosures for both Probation and the U.S. Attorney's Office.

**2. If sentenced to custody, Mr. Thomas will lose his housing.**

After Mr. Thomas received his diagnosis, he knew a safe place to perform his daily dialysis was paramount, so he applied to an affordable housing program. He spent years on a waitlist, but was eventually able to secure an apartment at Palouse Trails for $900 per month (the address on his loan applications, as well as where he was arrested). If a custodial sentence was imposed, Mr. Thomas would lose his rent-controlled apartment, and would be forced to enter the open rental market, where the average rent for an 886 sq. foot unit in Spokane is $1,344—at least.[10] A multi-hundred dollar rent increase jeopardizes Mr. Thomas's ability to find safe housing.

**3. If released, Mr. Thomas can begin paying restitution sooner.**

Always on the Court's mind is the best way to provide restitution to the victim. *See* 18 U.S.C. § 3553(a)(7). Here, time in custody is time not spent repaying Mr. Thomas's loan from the Government. And if Mr. Thomas loses his housing (see above), he'll have less money per month to pay restitution.

---

[10] https://www.rentcafe.com/average-rent-market-trends/us/wa/spokane/, last accessed on August 6, 2022.

**4.     Probation promotes accountability.**

Chapeau to the Government. After considering Mr. Thomas's medical issues, it asked the Court to impose a non-custodial sentence: 8 months home detention, followed by three years supervised release.[11] While Mr. Thomas respects (and appreciates) the Government's recommendation, he believes 5 years of probation provides a better fit for a few reasons:

*First*, a sentence of 8 months home detention unnecessarily burdens the U.S. Probation Office. Practically, home detention creates a lot of work for Probation, as they're required to monitor Mr. Thomas's whereabouts and pre-approve each trip from his house. The pre-approval process might be manageable if Mr. Thomas worked a 9-5 job and could set a consistent schedule for Probation. But he doesn't. Instead, Mr. Thomas works as a delivery driver, with a schedule that varies each day. Such inconsistency makes things difficult for Probation, especially when factoring in Mr. Thomas's many medical appointments. Home detention makes sense in many situations, but the minor benefits (punishment) don't outweigh the major burden on Probation.

*Second*, home detention limits the Government's ability to enforce a restitution payment schedule. If the Court follows the Government's request, then

---

[11] ECF No. 39 at 6 (Government's Sentencing Memo).

Mr. Thomas would be monitored by the Court for 3 years; if the Court follows Mr. Thomas's request, then he'd be monitored by the Court for 5 years. That additional two years benefits the Government, as it can turn to court-imposed sanctions should Mr. Thomas fail to pay his restitution.

*Third*, probation promotes more accountability than supervised release. If Mr. Thomas violates a condition of probation, then the Court has the ability to revoke his probation, leaving Mr. Thomas to face the same exposure he did at his underlying sentencing. Such potential sanctions promote accountability—more so than a time-served sentence, which just leaves the Court with supervision alone.

### III. Conclusion

Mr. Thomas provided false information to the SBA to secure two loans he didn't qualify for. For that, he apologizes. To get Mr. Thomas on the path towards loan repayment, he asks the Court to impose a sentence of 5 years of probation. Doing so not only promotes accountability for this offense, but also ensures Mr. Thomas remains in safe housing and on the transplant list for the kidney he so desperately needs.

Dated: August 6, 2022

        Federal Defenders of Eastern Washington & Idaho
        Attorneys for Roshon Edward Thomas

        s/ John B. McEntire, IV
        John B. McEntire, IV – WSBA #39469
        10 North Post Street, Suite 700
        Spokane, Washington 99201
        509.624.7606
        jay_mcentire@fd.org

**Service Certificate**

I certify that on August 6, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will notify Assistant United States Attorneys: Daniel Hugo Fruchter and Tyler Tornabene.

        s/ John B. McEntire, IV
        John B. McEntire, IV – WSBA #39469
        10 North Post Street, Suite 700
        Spokane, Washington 99201
        509.624.7606
        jay_mcentire@fd.org